UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Dontay Lavarice Reese, | Case No. 0:19-cv-01975-ECT-KMM |
| Plaintiff, | |
| v. | **ORDER** |
| Sherburne County Detention Center, et al., | |
| Defendants. | |

This matter is before the Court on the following motions filed by Dontay Lavarice Reese: (1) Plaintiff's Motion for an Order Granting Kenneth Daywitt Permission to Assist Plaintiff in this Case and an Order for Transportation or Other Form of Communication for Reese and Daywitt [ECF No. 53]; (2) Plaintiff's Motion for Allowance of Power of Attorney's Assistance in this Matter [ECF No. 54]; and (3) Plaintiff's Motion for Funds to Obtain an Expert Witness in Accordance with Rule 702 of Fed. R. Evid. [ECF No. 55]. In the first two motions, Mr. Reese asks the Court to allow Kenneth Daywitt[1] to assist him in litigating this case and to facilitate more efficient communication between them by ordering that the two be transported to meet in person or authorizing some other method of contact. In his third motion, Mr. Reese requests "an allowance of funds to be paid directly to the [psychiatric] expert of [his] choice…." [ECF No. 55.]

The Defendants have responded to the motions as required by the Court. Defendants MEnD Correctional Care, PLLC, Janell Hussain, and Barb Wisniewski (collectively "the MEnD

---

[1] Mr. Daywitt has filed an affidavit indicating that he is Power of Attorney for Mr. Reese. In the affidavit Mr. Daywitt confirms that he is not an attorney, but states that he has experience litigating cases in this Court. He asserts that he is willing to assist Mr. Reese in this litigation. Mr. Daywitt also avers that he is a resident of the Minnesota Sex Offender Program, in Moose Lake, Minnesota. [ECF No. 56.] Mr. Reese filed an authorization form permitting information to be released to Mr. Daywitt. In addition, Mr. Reese filed an executed document entitled "Statutory Short Form Power of Attorney Minnesota Statutes, Section 523.23," which purports to give Mr. Daywitt authority to act on Mr. Reese's behalf in several matters. [ECF No. 58.] Aside from the observations below regarding Mr. Daywitt's inability, as a non-lawyer, to represent Mr. Reese in this litigation, the Court offers no opinion on the legal effect of Mr. Reese's apparent decision to grant Mr. Daywitt power of attorney over certain decisions.

Defendants") take no position on Mr. Reese's request to receive assistance from Mr. Daywitt in the litigation. [ECF No. 62.] The MEnD Defendants indicate that "it is unlikely Plaintiff needs permission to obtain assistance [from Mr. Daywitt] as long as that assistance is not engaging in the unauthorized practice of law." [*Id.* at 2.] However, the MEnD Defendants do not believe they should be required to pay for any transportation or communication between Mr. Reese and Mr. Daywitt. Finally, the MEnD Defendants take no position on Mr. Reese's request for expert funds, but they object to any obligation that they pay for such an expert. [*Id.*]

Defendants Sherburne County Detention Center, Sheriff Joel Brott, Commander Pat Carr, Jail Administrator Brian Frank, and Mark Fritel (collectively "the Sherburne County Defendants") assert that Mr. Reese's motions are "so far out of the bounds of reasonableness and lacking in any legal authority that [they] defer generally to the Court" regarding the disposition of his motions. [ECF No. 63.] More specifically, the Sherburne County Defendants are concerned that Mr. Daywitt may be engaging in the unauthorized practice of law and request that they only be required to exchange pleadings with Mr. Reese, not with Mr. Daywitt. They also contend that they should not be required to pay for any transportation for Mr. Reese or Mr. Daywitt. Finally, the Sherburne County Defendants take no position on Mr. Reese's request for expert funds, but assert that they "will not provide any funds for such purposes." [*Id.* at 2.]

### *Motions Regarding Assistance and Communication with Mr. Daywitt*

The Court denies Mr. Reese's first two motions regarding assistance and communication with Mr. Daywitt as set forth below. The right of access to the court "entitles inmates to receive legal assistance from fellow inmates unless prison officials provide reasonable alternative assistance." *Gassler v. Rayl*, 862 F.2d 706, 707 (8th Cir. 1988) (citing *Johnson v. Avery*, 393 U.S. 483, 490 (1969)). "There is, however, no right … to receive legal assistance from a jailhouse lawyer independent of the right of access to the court." *Id.*

While there is no prohibition for Mr. Reese to receive assistance or advice from Mr. Daywitt regarding his case, there has been no showing here that Mr. Reese is being denied a constitutional right to access the courts as a result of the existing means of communication between them. He cites no authority for the idea that he has a right to assistance from a non-lawyer of his choosing. In fact, his only claim regarding access to courts in this matter appears to be based on allegations that he has not been provided sufficient access to a computer while at the Sherburne County Jail. Therefore, the Court declines to recommend that an injunction issue

requiring that the facilities where Mr. Reese and Mr. Daywitt are confined provide a specific method for them to communicate or that they be transported to meet in person.

Additionally, the Court must clarify that Mr. Daywitt is not authorized to practice law on Mr. Reese's behalf. The authorization for the release of information to Mr. Daywitt and the statutory short form power of attorney that have been filed do not change this reality.[2] For example, in *Kapp v. Booker*, No. CIV.A. 05-402-JMH, 2006 WL 385306, at *3 (E.D. Ky. Feb. 16, 2006), the court explained that even where a plaintiff has granted power of attorney to a non-lawyer in accordance with state law, this does not authorize the non-lawyer to conduct litigation the person's behalf.

> While an individual may represent themselves pro se, that is, without the benefit of counsel, all states have laws prohibiting a person who is not a lawyer from representing another person in a legal proceeding. While the power of attorney gives Ms. Kapp legal standing to assert claims owned by her husband on his behalf, it does not authorize her to practice law by representing another person, her husband, in a lawsuit: that must still be done by a licensed attorney.

*Id.* Other courts have reached similar conclusions. *See Valiant-Bey v. Morris*, 620 F. Supp. 903, 904 (E.D. Mo. 1985) (explaining that the plaintiff could "seek advice from an unlicensed jailhouse lawyer in making determinations for himself concerning the conduct of his litigation," but striking a response to the defendants' motion to dismiss signed by another inmate and directing the jailhouse lawyer not to sign documents on behalf of the plaintiff); *Barker v. JP Morgan Chase Bank*, No. 1:15-CV-4469-RWS-JFK, 2016 WL 9453816, at *1 (N.D. Ga. Mar. 25, 2016) ("In the present action, even assuming Ms. Funderburk is acting under a valid power of attorney, she may not provide legal representation to Plaintiff Barker because she is not licensed to practice law in this court."). Consistent with these cases, the Court will not prohibit Mr. Reese from receiving Mr. Daywitt's assistance, but Mr. Daywitt is not an attorney authorized to practice law before this Court. This means that Mr. Daywitt may not sign and file pleadings on Mr. Reese's behalf in this case and he does not "represent" Mr. Reese for purposes

---

[2] Pursuant to Minn. Stat. § 523.23, subdivision 4, a person who has been given the power of attorney may exercise the powers enumerated in Minn. Stat. § 523.24. Section 523.24, subdivision 10, allows the principal to authorize an "attorney-in-fact" to take several actions with respect to claims and litigation. However, "[i]n order to effectively exercise the powers granted to him, the holder of a power of attorney may often need to retain counsel." *See Estate of Keating v. Biddle*, 316 F.3d 7, 14 (1st Cir. 2002).

of this litigation. This also means that the MEnD Defendants and the Sherburne County Defendants are not required to communicate with Mr. Daywitt regarding Mr. Reese's litigation.

In the alternative to his request regarding the assistance of Mr. Daywitt, Mr. Reese asks to be referred to the Federal Bar Association's Pro Se Project. [ECF No. 54 at 2.] Specifically, he asks the Court to reconsider the previous decision declining to make such a referral. Mr. Reese states that he does not have sufficient ability to communicate with the Court because he had assistance from another individual who was in the same facility with every document filed in this case. However, that individual was later transferred to another unit, so Mr. Reese is now on his own. [ECF No. 57.] The Court is not persuaded that a referral to the Pro Se Project is appropriate in this case. Accordingly, it will not reconsider the June 11, 2020 Order denying Mr. Reese's request for such a referral.

### *Motion Regarding Expert Witness Funds*

Mr. Reese's request for expert-witness funds is also denied. Although Mr. Reese cites only Rule 702 of the Federal Rules of Evidence, Rule 706 allows a court to order the parties to show cause why expert witnesses should not be appointed and to ask the parties to submit nominations for such an appointment. Fed. R. Evid. 706(a). The court may take such a step in response to a party's motion or on its own. *Id.* Such an expert "is entitled to a reasonable compensation, as set by the court." Fed. R. Evid. 706(c). In a civil case like this one, the compensation is payable "by the parties in the proportion and at the time that the court directs—and the compensation is then charged like other costs." Fed. R. Evid. 706(c)(2).

An expert appointed under Rule 706 "does not serve as an advocate for any party and each party retains the ability to call its own experts." *Carley v. Gentry*, __ F. Supp. 3d __, 2020 WL 1855174, at *1 (D. Nev. Apr. 10, 2020) (citing Fed. R. Evid. 706(e)). "The court should … consider whether (1) appointment of an expert will promote accurate factfinding; (2) testimony from the parties' experts is sufficient to reveal the facts; and (3) the claim raises constitutional concerns." *Id.* Only where one party is indigent should the court "apportion all the cost to one side." *Id.* Appointment of experts pursuant to this rule is discretionary, but the procedure is rare and reserved for the most complex cases. *Willis v. Palmer*, 192 F. Supp. 3d 973, 974–75, 976 (N.D. Iowa 2016).

Here, Mr. Reese appears to be seeking to have the court appoint an expert witness to advocate on his behalf, not as a neutral expert whose assistance is necessary to reveal the facts.

4

That is not what Rule 706 authorizes a court to do.[3] *See Patton v. Loadholt*, __ F. Supp. 3d __, 2020 WL 1702164, at *1 (E.D. Cal. Apr. 8, 2020) (denying plaintiff's motion for appointment of a urologist to advocate in favor of his claims brought under 42 U.S.C. § 1983). Moreover, even if Mr. Reese's request were construed as a request for a neutral expert to be appointed, where a scheduling order has only recently been issued and no dispositive motions have been filed, the Court finds it is premature "to determine whether appointment of an expert is required to advise the court on complex scientific, medical or technical matters." *Id.* For these reasons, Mr. Reese's motion for expert funds is denied at this time.

**IT IS SO ORDERED**.

Date: August 11, 2020

                                                 *s/Katherine Menendez*
                                                 Katherine Menendez
                                                 United States Magistrate Judge

---

[3] The statute allowing indigent litigants to proceed in forma paupers, 28 U.S.C. § 1915, does not authorize appointment of or payment for expert witnesses. *See Stakey v. Stander*, No. 1:09-CV-00094-BLW, 2011 WL 887563, at *3 n.1 (D. Idaho Mar. 10, 2011). "Ordinarily, the plaintiff must bear the costs of his litigation, including expert expenses, even in pro se cases." *Id.*