UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Dontay Lavarice Reese, | Case No. 0:19-cv-1975 (ECT/KMM) |
| Plaintiff, | |
| v. | **REPORT AND RECOMMENDATION** |
| Sherburne County Detention Center, et al., | |
| Defendants. | |

This matter is before the Court on Defendants' Motions for Summary Judgment. [ECF Nos. 98, 107]. Defendants ask the Court to dismiss the entirety of Mr. Reese's Second Amended Complaint with prejudice because there is no dispute of material fact and the Defendants, for several reasons, are entitled to judgment as a matter of law. Specifically, they argue that some of Mr. Reese's claims do not amount to actionable constitutional violations, and that he has failed to make required showings on those that would. For the following reasons, the Court recommends granting Defendants' motions.

**I.    Background**

At all relevant times, Mr. Reese has been incarcerated in the Sherburne County Detention Center.[1] In July of 2019, Mr. Reese filed the original § 1983 complaint in this matter. [Compl., ECF No. 1]. In it, Mr. Reese alleged the that various defendants affiliated with Sherburne County

---

[1] There are gaps in Mr. Reese's medical history, which MEnD cites as evidence of Mr. Reese's temporary transfers to other facilities. [*See* MEnD Br., ECF No. 100 at 3 n.2, 9 n.4; Ex. A-1, ECF No. 102 at 450–454, 493–497]. However, these periods are brief and immaterial to the issues before the Court.

Detention Center and MEnD Correctional Care, PLLC,[2] violated his constitutional rights by way of deliberate indifference to his severe medical needs, failure to protect him, and medical malpractice. [Compl., ECF No. 1]. Mr. Reese filed a First Amended Complaint in April 2020, wherein he named several additional defendants—including the County of Sherburne—and alleged additional facts. [ECF No. 26]. In June 2020, the Clerk of Court filed Mr. Reese's Second Amended Complaint, which added and amended factual allegations and added a claim for denial of access to the courts. [ECF No. 52].[3]

In his Second Amended Complaint, Mr. Reese names as defendants the Sherburne County Detention Center, Sherburne County Sheriff Joel Brott, Sherburne County Jail Commander Pat Carr, Jail Staff Member Mark Fritel, and Jail Administrator Brian Frank (collectively, "the Sherburne Defendants" or "Sherburne").[4] Mr. Reese also names "MEnD, Inc." and Mental Health practitioners Janell Hussain and Barbara Wisniewski as defendants in the

---

[2] MEnD Correctional Care, PLLC, is named in the most recent complaint as "MEnD Inc." [*See* Mot., ECF No. 98].

[3] The Court issued an order directing the Clerk to separately file Mr. Reese's proposed second amended complaint after Defendants failed to respond to Mr. Reese's motion to Amend. [Order, ECF No. 43; Second Am. Compl., ECF No. 45]. Thereafter, Mr. Reese filed a clean copy of the new complaint, which was again filed as the Second Amended Complaint on June 24, 2020. [ECF No. 52].

[4] Mr. Reese brings his claims against the Sherburne Defendants in their "official and personal" capacities. [Second Am. Compl., ECF No. 2–3]. However, as Sherburne points out, "[a] suit against a county official in his official capacity is the equivalent of a suit against the county itself." *Doe v. Washington County*, 150 F.3d 920, 923 (8th Cir. 1998). Accordingly, the Court will treat all official-capacity claims as claims against the County of Sherburne. Additionally, with respect to Defendant Sherburne County Detention Center, the court agrees with Sherburne that detention centers are not legal entities subject to suit, and hereby recommends dismissal of Mr. Reese's claims to that extent. *De la Garza v. Kandiyohi Cnty. Jail*, 18 F. App'x 436, 437 (8th Cir. 2001) (per curiam).

Second Amended Complaint (collectively "the MEnD Defendants" or "MEnD").[5] He alleges that the Defendants violated his constitutional rights and committed medical malpractice. [Second Amended Complaint (hereinafter, "SAC"), ECF No. 52 at 7–10]. Specifically, Mr. Reese alleges that the Sherburne Defendants restricted his access to a computer that is normally available to inmates for legal research and drafting, thereby denying his access to the courts in contravention of his constitutional rights, and that they did so in retaliation for his initiating this action. [SAC, ECF No. 52 at 7]. The Second Amended Complaint also alleges that the Defendants did not provide him with mental-health medication that he was taking prior to incarceration and failed to provide him with other effective medication thereafter. Mr. Reese asserts that this led to suicide attempts, self-harming behavior, and "a multitude of other undesirable behaviors," and amounted to deliberate indifference to his serious medical needs and failure to protect him in violation of his Eighth Amendment Rights, as well as common-law medical malpractice. [SAC, ECF No. 52 at 3–4]. Mr. Reese also argues that Defendants demonstrated deliberate indifference and failure to protect by allowing him access to objects and environments that enabled him to harm himself. Mr. Reese seeks compensatory and punitive damages, as well as injunctive relief in the form of an order directing Defendants to prescribe the medication he seeks and provide access to "all legal resources." [SAC, ECF No. 52 at 8–9].

The Sherburne Defendants and MEnD Defendants filed separate motions for summary judgment on March 1, 2021. [ECF Nos. 98, 107]. With their motion, the MEnD Defendants submitted nearly two thousand pages of Mr. Reese's medical records from Sherburne County Jail

---

[5] Mr. Reese also names "Joe Doe 1–5 and Jane Doe 1–5," who were "duly appointed and/or acting employees of both/either Sherburne County Jail or MEnD," as defendants. However, many of the allegations and claims in the Second Amended Complaint do not specify the defendant against whom they are levied.

as "Exhibit A."[6] [ECF Nos. 102–103]. MEnD argues that it is entitled to judgment as a matter of law because Mr. Reese has failed to make required showings and that what he complains of is non-actionable disagreement with treatment decisions. They also argue that they are entitled to judgment on the medical-malpractice claims because Mr. Reese has failed to abide by statutory affidavit requirements for such a claim. The Sherburne Defendants similarly argue that Mr. Reese has failed to make required showings for his Eighth Amendment claims; that Mr. Reese has failed to show that his access to the courts has been restricted; and that any computer restrictions were temporary, pursuant to punitive policies, and not the result of retaliation.

Mr. Reese responded to Defendants' motions on March 31, 2021, and on April 13, 2021, MEnD filed a notice of no reply and Sherburne filed a reply. [ECF Nos. 137, 139, 140].

## II.   Legal Standard

### A.  Summary Judgment

Summary judgment may be granted if, after drawing all reasonable inferences in favor of the nonmoving party, there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The moving party bears the burden of showing there are no disputed material facts. *Id*. at 322; *Mems v. City of St. Paul, Dep't of Fire & Safety Servs.*, 224 F.3d 735, 738 (8th Cir. 2000). The Court must view the evidence and all reasonably drawn inferences arising from it in light most favorable to the nonmoving party. *Graves v. Ark. Dep't of Fin. & Admin.*, 229 F.3d 721, 723 (8th Cir. 2000); *Calvit v. Minneapolis Pub. Schs.*, 122 F.3d 1112, 1116 (8th Cir. 1997). The nonmoving party may not dispute judgment on mere allegations or denials, but must show

---

[6] Exhibit A was filed in two separate docket entries—Nos. 102–103—and designated as "Part 1" and "Part 2" respectively. In this R&R, the Court cites to these documents as "Ex. A-1" and "Ex. A-2."

through admissible evidence there are specific facts which create a genuine dispute for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986); *Krenik v. County of Le Sueur*, 47 F.3d 953, 957 (8th Cir. 1995).

A party is also entitled to summary judgment if the nonmoving party has failed "to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. Where this is the case, "there can be no genuine issue as to any material fact, since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial," and the moving party is entitled to summary judgment. *Id.* at 322–23; *Laughlin v. Schriro*, 430 F.3d 927 (8th Cir. 2005).

Finally, the Court notes that, in addition to being afforded all reasonable favorable inferences, because Mr. Reese is pro se, he is also entitled to the benefit of a liberal reading of his pleadings and other filings. *Smith v. St. Bernards Regional Medical Ctr.*, 19 F.3d 1254, 1255 (8th Cir. 1994); *Stennes v. Summit Mortgage Corp.*, No. 12-cv-913 (SRN/AJB), 2012 WL 5378086 (D. Minn. Oct. 31, 2012), *aff'd*, 513 F. Appx. 631 (8th Cir. 2013).

### III.  Analysis

#### A.  Access to Courts & Retaliation

Mr. Reese's Second-Amended Complaint asserts that the Sherburne Defendants precluded him from accessing the courts in violation of his constitutional rights by limiting his access to the jail's "legal computer." He also argues that his access to the legal computer was restricted in retaliation for filing this lawsuit. In support of their Motion for Summary Judgment, the Sherburne Defendants argue that (1) Mr. Reese has failed to show that his access to the courts was actually restricted and therefore that he was actually injured; (2) the computer

restrictions were pursuant to disciplinary policy and therefore not retaliatory, and (3) Mr. Reese failed to exhaust his administrative remedies.

**Actual Injury**

Incarcerated persons have a constitutional right of meaningful access to the courts. *Bounds v. Smith*, 430 U.S. 817 (1977). While the textual source of this constitutional right is a subject of controversy, the Eighth Circuit has held that it emanates from either the First or the Fourteenth Amendment. *Earl v. Fabian*, 556 F.3d 717, 726 (8th Cir. 2009) ("Access to the courts is a constitutional right whose basis is unsettled."); *Schrier v. Halford*, 60 F.3d 1309, 1311 n.3 (8th Cir. 1995). However, under either theory, a plaintiff prisoner must show that he was actually injured by the alleged denial of access. *Lewis v. Casey*, 518 U.S. 343, 349 (1996); *White v. Kautzky*, 494 F.3d 677, 680 (8th Cir. 2007).

To show actual injury, a plaintiff must show that "the state has not provided an opportunity to litigate a claim challenging the prisoner's sentence or conditions of confinement in a court of law, . . . that is, the hinderance of a nonfrivolous and arguably meritorious underlying legal claim." *White*, 494 F.3d at 680; *Hartsfield v. Nichols*, 511 F.3d 826, 832 (8th Cir. 2008) ("To prove actual injury, a prisoner must demonstrate that a nonfrivolous legal claim had been frustrated or was being impeded." (quotation omitted)). "It is insufficient to show that [the] conduct made litigation inconvenient. Instead the prisoner must show that this conduct actually prevented the prisoner from litigating the claim." *Beck v. Pawlenty*, No. 04-cv-686 (MJD/JJG), 2006 WL 2506993, at *5 (D. Minn. Aug. 29, 2006) (citing *Myers v. Hundley*, 101 F.3d 542, 544 (8th Cir. 1996)).

Mr. Reese argues that his access to the courts was restricted because he was denied access to the legal computer, which he argues is "the only source of case law provided by

Sherburne County . . . [and] the only access to courts provided by the Defendants." [SAC, ECF No. 52 ¶ 34]. Sherburne responds that, save for a couple brief interruptions, Mr. Reese maintained regular access to the computer, and that even when his computer access was restricted, he had access to the courts through other available means. [Sherburne Br., ECF No. 109 at 3]. Therefore, Sherburne argues, Mr. Reese's access to the courts was never actually restricted and he cannot show actual injury. The Court agrees.

Sherburne acknowledges that they restricted Mr. Reese's computer access on two occasions. First, on May 3, 2019, Sherburne restricted Mr. Reese's computer access for 30 days after Mr. Reese swallowed a flash drive. Mr. Reese was transported to the hospital after he reported swallowing several objects. The hospital staff removed a USB drive from Mr. Reese's rectum, but were unable to retrieve a pencil he had swallowed. [Sherburne Br., ECF No. 109 at 6 (citing Ex. 14, ECF No. 123)]. [7] Mr. Reese's computer access was denied a second time on January 3, 2020, when he was placed in lock-down for ten days after he was found to have been hiding a flash drive. [Ex. 15, ECF 111-3]. Aside from these temporary restrictions, the record reflects, and Mr. Reese does not contest, that he made extensive use of the legal computer during the pendency of this action.

The jail maintains logs of when inmates use the computer, and these show Mr. Reese checked out the computer on 57 days between March 18, 2020, and January 31, 2021—sometimes multiple times in one day, sometimes several days in a row. [Ex. 26, ECF No. 111-8 at 1–11]. While there do appear to be gaps in his computer use in 2020, there is no evidence to

---

[7] Less than three weeks later, on May 23, 2019, Mr. Reese was again hospitalized after swallowing several pencils, a screw, and part of his wristband. [Ex. 20, ECF No. 128; Ex. A-2, ECF No. 103 at 388]. At this point, however, Mr. Reese's computer use was still restricted, and it is unclear whether this new incident extended his temporary ban. *See id.*

support Mr. Reese's unqualified allegation that he was denied access to the computer generally. [*See* Ex. 26, ECF No. 111-8 (showing a 21-day gap in June, a 31-day gap starting in August, and a 62-day gap starting in September)].

Likewise, despite his assertion in the Second Amended Complaint that the computer is the "only source of case law provided by Sherburne County" and the only means of access to the courts, Mr. Reese has not disputed Sherburne's subsequent assertion that inmates also have access to other legal resources, such as the ability to communicate with counsel and check-out law books and an available law library. [Ex. 24 at 1, ECF No. 111-6]. In fact, Sherburne's logs demonstrate that Mr. Reese "checked" into the law library 11 times between December 31, 2020, and January 29, 2021. [Ex. 26, ECF No. 111-8 at 8, 12] While Mr. Reese may prefer to use the computer, he is not constitutionally guaranteed that privilege when alternative means of access to the courts exist and are sufficient. *Bounds*, 430 U.S. at 830 ("[W]hile adequate law libraries are one constitutionally acceptable method to assure meaningful access the courts, our decision here . . . does not foreclose alternative means to achieve that goal. . . . [A] legal access program need not include any particular element we have discussed."). In short, the Court concludes that, based on the evidence and uncontested facts, no reasonable juror could conclude that Mr. Reese's access to legal resources was meaningfully interrupted.

Moreover, even if Mr. Reese's access to various resources was interrupted, he has not shown that those interruptions caused the requisite actual injury. Mr. Reese has neither alleged nor evidenced injury to any cause of action resulting from Sherburne's restrictions. At most, he alleges that the "[p]reparation and filing of the complaint was denied for an extended period of time." [SAC, EFC No. 52 ¶ 34]. But even if there was evidentiary support for this claim, "[i]t is insufficient to show that this conduct made litigation inconvenient. Instead, the prisoner must

show that [the defendant's] conduct actually prevented the prisoner from litigating the claim." *Beck v. Pawlenty*, No. 04–cv–686 (MJD/ JJG), 2006 WL 2506993 at *5 (D. Minn. Aug. 29, 2006) (citing *Cody v. Weber*, 256 F.3d 764, 767–68 (8th Cir. 2001), and *Myers v. Hundley*, 101 F.3d 542, 544 (8th Cir. 1996)).

### Exhaustion of Remedies

Sherburne also argues that, even if Mr. Reese has made sufficient showings to survive summary judgment, he has not exhausted his administrative remedies by not appealing any of his grievances on the computer-access issue. Mr. Reese responds by pointing out that "the evidence includes voluminous grievances and appeals."

The Prison Litigation Reform Act requires exhaustion of administrative remedies before an inmate can file a lawsuit regarding prison conditions. 42 U.S.C. § 1997e(a). The requirement is mandatory and applies to § 1983 suits. *Woodford v. Ngo*, 548 U.S. 81, 85 (2006); *Porter v. Nussle*, 534 U.S. 516, 524–25 (2002). This means that prisoners are required to follow and complete the grievance procedures of the institution to which they are confined. *Jones v. Bock*, 549 U.S. 199, 218 (2007). The Sherburne County Detention Center's grievance procedures provide that "inmates/detainees are allowed one appeal." [Ex. 23, ECF No. 111-5 at 4]. While Mr. Reese has filed a number of grievances pertaining to his restricted access to the computer [*e.g.*, ECF Nos. 111-1, 111-2, 111-9, 116], the record contains no appeals of grievances on that issue.

Accordingly, because Mr. Reese has not made an adequate showing as to a necessary element of his claim that he was denied access to the courts, and because he has not exhausted his administrative remedies, Defendants are entitled to judgment as a matter of law on that claim.

### B. Eighth Amendment Claims

Mr. Reese devotes two paragraphs of the "Claims" section of his most recent Complaint to alleged Eighth Amendment violations. [SAC, ECF No. 52 ¶¶ 36, 38). He seems to assert two distinct claims: (1) that Defendants failed to protect him from harm; and (2) that Defendants were deliberately indifferent to his severe medical needs by way of providing inadequate mental-health treatment.[8] *Walker v. Snell*, No. 3:17-CV-383 (MAB), 2021 WL 1171681, at *1 n.1 (S.D. Ill. Mar. 29, 2021) (observing that claims alleging Eighth-Amendment violations usually fall into one of four types: "excessive force, failure to protect, deliberate indifference to serious medical needs, and inhumane conditions of confinement"); *see also Burriola v. State of Nevada*, No. 3:08-CV-0149-ECR (RAM), 2009 WL 2151900, at *5 (D. Nev. May 7, 2009). However, his failure-to-protect claim alleges that Defendants failed to protect him from causing harm to himself as a result of his mental illnesses. [SAC, ECF No. 52 ¶ 36; *see also* Reese Br., ECF No. 137]. Where the harm from which a prisoner claims to be in need of protection is self-harm, the Eighth Circuit has treated failure-to-protect allegations as deliberate-indifference-to-medical-needs claims. *Hott v. Hennepin Cnty.*, 260 F.3d 901, 905 (8th Cir. 2001) (collecting cases). Accordingly, the Court construes Mr. Reese's complaint as raising a single *type* of Eighth-Amendment claim—deliberate indifference to severe medical needs—but basing that claim on

---

[8] Mr. Reese has also previously argued Sherburne County is liable under *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978). However, because the Court concludes that no violation of Mr. Reese's constitutional rights occurred, there can be no municipal liability under *Monell*. *McCoy v. City of Monticello*, 411 F.3d 920, 922 (8th Cir. 2005) ("[F]or municipal liability to attach [under *Monell*], individual liability first must be found on an underlying substantive claim."). Accordingly, the Court will not consider whether the county would be liable under *Monell*.

two different theories: inadequate protection from self-harm and inadequate mental-health treatment.

"[Not] every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment." *Estelle v. Gamble*, 429, U.S. 97, 104-105 (1976). To be a constitutional violation, the denial of care must be so egregious that it becomes "repugnant to the conscience of mankind" or an "unnecessary and wanton infliction of pain." *Id.* at 105–106. A defendant must "know of and disregard an excessive risk to inmate health or safety." *Letterman v. Does*, 789 F.3d 856, 862 (8th Cir. 2015) (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)). For each claim, Mr. Reese must show "(1) 'an objectively serious medical need,' and (2) 'that the defendant knew of and disregarded that need.'" *Redmond v. Kosinski*, 999 F.3d 1116, 1120 (8th Cir. 2021) (quoting *Coleman v. Rahija*, 114 F.3d 778, 784 (8th Cir. 1997)). Prisoners do not have the right to any particular course of treatment, and "prison doctors remain free to exercise their independent medical judgment." *Dulany v. Carnahan*, 132 F.3d 1234, 1239 (8th Cir. 1997). "[D]eliberate indifference requires a highly culpable state of mind approaching actual intent." *Kulkay v. Roy*, 847 F.3d 637, 643 (8th Cir. 2017).

### Inadequate Protection from Self-Harm

Mr. Reese argues that Defendants repeatedly failed to properly protect him from the risk of self-harm, including by way of "the conditions they created, which actually resulted in great bodily harm to the Plaintiff ultimately requiring him to be resuscitated at the hospital." [SAC, ECF No. 52 at ¶ 36]. Mr. Reese points to Defendants "continu[ing] to provide the Plaintiff with pencils and flash drives to swallow, uncrushed pills to hoard, and inappropriate and unsafe housing assignments." [Reese Br., ECF No. 137 at 4].

As to the first element, the Court concludes that Mr. Reese has demonstrated an objective and serious medical need. His medical records show that he has a history of depression, chronic suicidal ideation throughout his entire adult life, and at least three suicide attempts. [Ex. A-1 at 856, ECF No. 102; *see generally* Exs. A-1–A-2, ECF Nos. 102–103]. The risk of suicide has routinely been held to be a serious medical need. *Gregoire v. Class*, 236 F.3d 413, 417 (8th Cir. 2000) (citing *Rellergert v. Cape Girardeau Cty.*, 924 F.2d 794 (8th Cir. 1991)). Mr. Reese's past suicide attempts, repeated self-harming behavior such as swallowing foreign objects which require hospitalization, and continuing suicidal ideation support a finding that Mr. Reese has an objective, serious medical need.

As for the second element, Mr. Reese must make a sufficient showing to create a fact issue as to whether Defendants were deliberately indifferent to the risk of harm he posed to himself. This is where Mr. Reese's claim fails, as none of the evidence he cites demonstrates Defendants' indifference.

Mr. Reese first points to the multiple times he was hospitalized, and relatedly, the times he swallowed foreign objects. His records show his hospitalizations have all been in connection with him swallowing foreign objects, making escalating comments of suicidal feelings, or otherwise actively trying to harm himself. [*See, e.g.*, Ex. A-2, ECF No. 103 at 602–606]. The most serious of these incidents—which Mr. Reese repeatedly references in his reply brief—took place on November 28, 2018, after Mr. Reese threw himself backwards off a table in an apparent suicide attempt. [Ex. A-2, ECF No. 103 at 65]. He was taken to Mercy Hospital, where staff found no serious injuries. When told he would be immediately discharged, he became violent and attempted to hang himself by wrapping a phone cord around his neck. *Id.* Doctors attempted to sedate him with ketamine, to which he—apparently unbeknownst to anyone—had an allergy,

causing him to go into laryngospasm and become hypoxic, requiring emergency intubation and possibly resuscitation. *Id.*[9]

Mr. Reese also cites two incidents where he was found hoarding medication in violation of Sherburne policy. In July 2018, jail officials found four different medications hidden in his cell, including bupropion (a.k.a. Wellbutrin). [Ex. A-2, ECF No. 103 at 913]. All four drugs were discontinued within a week, two of them immediately. *Id.* In February 2020, jail officials found Mr. Reese had hoarded six different drugs, totaling over 50 tablets. [Ex. A-1, ECF No. 102 at 873]. Two prescriptions were immediately discontinued, one dosage was lowered, and the remainder were required to be crushed before being given to him to prevent "cheeking." *Id.* at 874. Mr. Reese was also sent to the hospital by ambulance for further evaluation, and an urgent referral was placed to "Mental Health." MEnD providers ordered that he be placed on suicide restrictions when he returned. *Id.* at 876. His subsequent suicide risk assessment summarized him as saying that "he stopped taking the pills because they were not helping and were making him sick." When asked why he did not just refuse the pills, "[He] stated clearly and calmly that he is going to court soon. He has a stockpile of pills to show that people were not watching him properly. He has documented this now and intends to use it for his lawsuit." *Id.* at 866. He later claimed on several occasions he did not take them because he was fasting that day for religious reasons. *E.g.*, *id.* at 6, 853.

---

[9] *See also* Reese Br., ECF No. 137 at 2–3, 6; Ex. A-1, ECF No. 102 at 522. The medical records themselves do not explicitly describe needing to resuscitate Mr. Reese, but say he had a reaction to ketamine "causing him to code." It is clear he was required to be at least intubated. Mr. Reese states in his Second Amended Complaint and Reply Memorandum that he required resuscitation and CPR, which Defendants do not contest.

Although Mr. Reese cites these events as evidence of Defendants' indifference, they serve as the opposite. First, the hospitalizations show Defendants' ongoing concern that Mr. Reese receive urgent medical treatment when called for. Although Mr. Reese swallowed small objects on at least three occasions, Defendants limited his access to pencils and flash drives afterwards, which he has complained about in this lawsuit.[10] The circumstances allegedly requiring resuscitation were not caused by any Defendants. It was only after Mr. Reese became aggressive and attempted to wrap a cord around his neck that he was sedated, and it was the hospital staff, not Defendants, who administered the ketamine which caused the reaction. The record simply contradicts Mr. Reese's assertion that Defendants were deliberately indifferent. Instead, each case of hospitalization evinces concern on the part of Defendants, not indifference, and does not serve as evidence they violated his constitutional rights.

Next, Defendants' immediate adjusting Mr. Reese's medication after discovering his hoarding, as well as discontinuing or reducing prescriptions as needed, show a lack of indifference. Not only did Defendants stop prescriptions that could be dangerous to him, they required other doses to be lowered and the rest to be crushed so that the drugs could not be cheeked. More generally, the record is replete with instances of Defendants monitoring and responding to Mr. Reese's depression and general mental health. There are hundreds of pages of suicide risk screening forms, mental health clinic contacts and monitoring, mental health referrals, and special precautions. Defendants adjusted and changed his prescriptions, dosages,

---

[10] Mr. Reese himself notices the contradiction in "argu[ing] that by providing the Plaintiff with access to pencils and a flash drive . . . Defendants showed deliberate indifference[,] when the Plaintiff has complained so loud and so long about denial of access to court." [Response, ECF No. 137 at 4]. He explains, however, that Defendants are "responsible for a mentally disturbed and self-destructive man," and that "[w]e can expect that self-destructive and suicidal inmates will complain about the unpleasant measures taken to safeguard them." [Response, ECF No. 137 at 4].

and the administration times not just in response to his medical needs, but also his comfort levels and danger signs.

The overwhelming volume of evidence shows Defendants were not indifferent to Mr. Reese's risk of self-harm. Each example he points to in fact demonstrates the opposite, and the record as a whole shows Defendants were not indifferent to Mr. Reese's health and took precautions when necessary.

**Inadequate Mental Health Treatment**

Mr. Reese's second Eighth Amendment claim alleges that Defendants provided inadequate treatment for his mental illness by repeatedly refusing to prescribe him particular medications which he felt had been helpful to him in the past. [SAC, ECF No. 52 ¶ 36]. Specifically, he requests psychiatric medications previously prescribed to him by the Minnesota Department of Health Services. [*Id.* at p. 9].

Turning to the first element, both the Sherburne and MEnD Defendants argue that a medical condition is "serious" if it has been diagnosed by a doctor or is so obvious that even a layperson would easily recognize the need for medical attention. Despite citing the same caselaw, Defendants come to opposite conclusions as to whether Mr. Reese has a serious medical need. While Sherburne concedes that he does have such a need, MEnD denies it on the basis that his claimed psychosis has never been diagnosed. [Sherburne Br., ECF No. 109 at 18; MEnD Br., ECF No. 100 at 12–13]. However, the record demonstrates at least the existence of a fact issue as to the seriousness of Mr. Reese's medical needs, and likely that such a need is beyond dispute. He has been diagnosed with recurrent depression, anxiety, cluster B personality disorder, mood disorder, and narcissistic personality disorder. [*E.g.*, Ex. A-1, ECF No. 102 at 624–25]. He is also seen regularly by the jail's mental health staff and has experienced an array of other issues

15

as previously detailed. A reasonable jury could readily conclude that Mr. Reese's medical needs were objectively serious. *Jones v. Minn. Dept. of Corr.*, 512 F.3d 478, 482 (8th Cir. 2008) ("The determination that a medical need is objectively serious is a factual finding. If there is a dispute, and a reasonable jury could return a verdict for either party, then summary judgment is not appropriate").

The second element cuts in the opposite direction. The record does not support Mr. Reese's assertion that any Defendants were reasonably indifferent to his medical needs. When Mr. Reese first arrived at Sherburne Detention Center, he had prescriptions for bupropion, gabapentin, trazodone, prazosin, and lactase. [Ex. A-2, ECF No. 103 at 927]. As discussed previously, he has twice been found hoarding drugs in his cell, including bupropion and prazosin, as well as many others. [Ex. A-2, ECF No. 103 at 913; Ex. A-1, ECF No. 102 at 873]. Additionally, the record shows that he has repeatedly sought bupropion and gabapentin specifically. [*See*, *e.g.*, Ex. A-1, ECF No. 102 at 827, 920; Ex. A-2, ECF No. 103 at 64]. Providers have also repeatedly noted his seeking out of other medications, and prescriptions in general. [*E.g.*, Ex. A-2, ECF No. 103 at 96, 422]. During his time at Sherburne, Mr. Reese has had many medication trials, including prazosin, amitriptyline, oxcarbazepine, Zoloft, Abilify, Remeron, Cogentin, Wellbutrin, Buspar, Zyprexa, gabapentin, Prozac, Effexor, Haldol, Seroquel, Depakote, Lexapro, trazodone, Risperdal, Trileptal, and Cymbalta. [Ex. A-1, ECF No. 102 at 856; *id.* at 812].

Based on these facts, as well as Mr. Reese's own arguments, the issue he raises is not whether Defendants failed to prescribe Mr. Reese necessary or adequate medicine. Rather, Mr. Reese bases his deliberate indifference argument exclusively on medical personnel not prescribing him the specific medications he wanted. Defendants have no duty to continue the

prescriptions Mr. Reese was prescribed prior to entering their custody. *Vaughan v. Lacey*, 49 F.3d 1344, 1346 (8th Cir. 1995) (holding prison officials were not deliberately indifferent in following the prescription orders of the inmate's current physician, even when they were contrary to the current opinion of the inmate's former doctor). Here, defendants "responded promptly to [Mr. Reese's] many requests for additional medical and psychiatric care," and "consistently administered the medications that its physicians prescribed." *Id.* More generally, where plaintiff has shown "nothing more than a disagreement as to the proper course of treatment, [it] is not actionable under the Eighth Amendment." *Id.*; *Meuir v. Green Cnty Jail Employees*, 487 F.3d 1115, 1118–19 (8th Cir. 2007) (noting an inmate's disagreement with a prison doctor's independent medical judgment is not sufficient to show deliberate indifference); *Dulany*, 132 F.3d at 1239 ("[I]nmates have no constitutional right to receive a particular or requested course of treatment, and prison doctors remain free to exercise their independent medical judgment."); *Taylor v. Bowers*, 966 F.2d 417, 421 (8th Cir. 1992) ("[A] prisoner's mere difference of opinion over matters of expert medical judgment or a course of medical treatment fail[s] to rise to the level of a constitutional violation.").

Because none of Mr. Reese's allegations regarding the Defendants' actions in this case are cognizable as Eighth Amendment violations, Defendants are entitled to judgment as a matter of law.

### C. Medical Malpractice

Finally, Mr. Reese brings a medical malpractice claim against the MEnD Defendants under Minnesota state law. He alleges they committed medical malpractice by failing to provide effective medication, substituting the appropriate medicine for inferior treatment due to costs,

17

and going against medical advice and the minimum standards of care. [SAC, ECF No. 52 ¶¶ 23, 37].

To make a prima facie malpractice case under Minnesota law, a plaintiff must, through expert testimony, prove: "(1) the standard of care recognized by the medical community as applicable to the particular defendant's conduct, (2) that the defendant in fact departed from that standard, and (3) that the defendant's departure from the standard was a direct cause of the patient's injuries." *Dickhoff v. Green*, 836 N.W.2d 321, 329 (Minn. 2013). However, Minn. Stat. § 145.682 also requires a plaintiff to supply two affidavits in support of medical a malpractice claim, the first of which "must be submitted with the complaint and state that before commencing the lawsuit, plaintiff's attorney reviewed the facts of the case with a medical expert who believed that at least one defendant named in the suit deviated from the applicable standard of care and thereby injured the plaintiff." *Bellecourt v. United States*, 784 F. Supp. 623, 636 (D. Minn. 1992). Mr. Reese has not submitted such an affidavit in this case, and this district has repeatedly and consistently rejected medical malpractice claims on this basis. *E.g.*, *Id.*; *Scher v. Bureau of Prisons*, No. 19-cv-2001 (SRN/BRT), 2020 WL 6927572, at *8 (D. Minn. July 1, 2020); *Robinson v. Minnesota*, No. 17-cv-437 (DSD/KMM), 2020 WL 6729384, at *5 (D. Minn. July 22, 2020); *Allan v. Ludeman*, No. 10-cv-176 (ADM/JJK), 2011 WL 978768, at *15 (D. Minn. Jan. 18, 2011). Accordingly, the Court recommends granting Defendants' motions for summary judgment as to Mr. Reese's medical malpractice claim.

### IV. Recommendation

Based on the foregoing, the Court recommends that Defendants' Motions to Dismiss [ECF Nos. 98, 107] be **GRANTED** and Mr. Reese's claims against the Sherburne and MEnD Defendants be **DISMISSED WITH PREJUDICE**.

Date: September 14, 2021

*s/Katherine Menendez*
Katherine Menendez
United States Magistrate Judge

**NOTICE**

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set for in LR 72.2(c).

**Under Advisement Date:** This Report and Recommendation will be considered under advisement 14 days from the date of its filing. If timely objections are filed, this Report and Recommendation will be considered under advisement from the earlier of: (1) 14 days after the objections are filed; or (2) from the date a timely response is filed.